IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

STEVEN A. BURKHAMMER, II,

        Plaintiff,

v.                                                                         Civil Action No. 1:12-cv-113

MICHAEL ASTRUE,
Commissioner of Social Security,

        Defendant.

**REPORT AND RECOMMENDATION THAT MR. BURKHAMMER'S
MOTION FOR SUMMARY JUDGMENT BE DENIED AND COMMISSIONER'S
MOTION FOR SUMMARY JUDGMENT BE GRANTED**

## I. INTRODUCTION

### A. Background

On July 16, 2012, Steven A. Burkhammer, II, filed this action under 42 U.S.C. §§ 405(g) and 1383(c) for judicial for review of the decision of the Commissioner of Social Security that denied his claims for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 401-433, 1381-1383f. The Commissioner filed his Answer to this Complaint on September 20, 2012. Mr. Burkhammer and the Commissioner then filed cross motions for summary judgment. Finally, Mr. Burkhammer replied to the Commissioner's arguments contained in his motion for summary judgment. The motions are now ripe for this Court's review, and for this report and recommendation.

### B. The Pleadings

    1. Mr. Burkhammer's Motion for Summary Judgment and Memorandum in Support.

    2. Commissioner's Motion for Summary Judgment & Memorandum in Support.

    3. Mr. Burkhammer's Reply to Commissioner's Motion.

**C. Recommendation**

I recommend that:

1. Mr. Burkhammer's Motion for Summary Judgment be **DENIED** because the ALJ based his decision that Mr. Burkhammer does not have deficits in adaptive functioning on substantial evidence.

2. Commissioner's Motion for Summary Judgment be **GRANTED** for the reasons set forth.

## II. FACTS

**A. Procedural History**

Mr. Burkhammer applied for benefits in July 2008, claiming disability since April 2008, which includes difficulties in reading and understanding, learning disabilities, leg problems, and shoulder problems. (R. 146-53, 176). The application for benefits was denied in the first instance, and upon reconsideration. (R. 86-91, 96-101). Mr. Burkhammer then requested a hearing before an Administrative Law Judge (ALJ), which was held on June 22, 2010. Mr. Burkhammer, who was represented by counsel, testified at the hearing, as did an impartial Vocational Expert (VE). On July 8, 2010, the ALJ issued an unfavorable decision, which Mr. Burkhammer appealed to the Appeals Council. After the Appeals Council denied review of the ALJ's decision, Mr. Burkhammer brought his claim to this Court.

**B. Personal History**

Mr. Burkhammer was born May 19, 1977, making him a younger individual under the meaning of the Act. Mr. Burkhammer has been married and divorced three times, and has four children through these relationships. He was raised by his father until he was 16, then placed in

foster care; his mother left when he was very young. He has two sisters. He completed the Ninth Grade in school, but dropped out because he claimed he had trouble learning and did not like being picked on in school. Mr. Burkhammer has had several jobs throughout his life, ranging from a cook at a fast food restaurant to a laborer in the sheet metal industry. He has been unemployed since the onset of his alleged disability.

**C. Medical History**

The following medical history is relevant to the issue of whether substantial evidence supports the ALJ's finding that Mr. Burkhammer is not under a disability and can still perform work in the national economy.[1]

In February 1992, when Mr. Burkhammer was fourteen years old and in the seventh grade, Terry Laurita, M.A. issued a report based on a psychological evaluation of Mr. Burkhammer. Ms. Laurita interviewed Mr. Burkhammer on several occasions, and performed a battery of tests, including: the Wide Range Achievement Test-Revised (WRAT-R); the Minnesota Multiphasic Personality Inventory (MMPI); the Wechsler Intelligence Test for Children-Revised (WISC-R); and the Slosson Intelligence Test-Revised (SIT-R). (R. 418.) Ms. Laurita measured Mr. Burkhammer's IQ at 69 verbal, 78 performance, and 72 full scale, and noted that although Mr. Burkhammer "was not happy about having to take the intelligence test," she believed that the scores were "a fair estimate of his current level of intellectual functioning." (R. 419-20.)

On November 10, 1993, when Mr. Burkhammer was sixteen years old, Braxton County Schools issued an adaptive evaluation report, which reported that he achieved a Survival Skills

---

[1] Because Mr. Burkhammer's sole argument in this action is that he is mentally disabled under Listing 12.05(c) of the Act, this medical history will stick solely to medical facts about that mental disability.

3

Quotient[1] of 78, based on a mean of 100 and a standard deviation of 15. (R. 416.) The report noted that Mr. Burkhammer performed in the average range in functional signs, time, and money, but was relatively weak in basic concepts, tools, domestics, health and safety, public service, and measurements. (*Id.*) Accordingly, the report recommended that he be provided learning activities to help in those deficient areas. (*Id.*)

Further, in December 1994 when he was in tenth grade and nearly eighteen years old, Braxton County High School issued an Individualized Education Program (IEP) where it was determined that Mr. Burkhammer would participate in regular education classes 88% of the time, receiving modified grades, and in special education classes 12% of the time.[2] (R. 421.) The eligibility committee for that IEP determined that Mr. Burkhammer, at that time, did meet the criteria for mildly mentally impaired. (R. 427.) About a month later, the school administered the Woodcock-Johnson Revised Test, the scores of which place him in between third and sixth grade in the various subjects. (R. 417.) Mr. Burkhammer dropped out during this year of school.

On September 19, 2008, Wilda Posey, M.A., at the behest of the West Virginia Disability Determination Service, performed several assessments on Mr. Burkhammer, including a clinical interview, a mental status examination, a Wechsler Adult Intelligence Scale (WAIS-III), and a Wide Range Achievement Test (WRAT-4). Mr. Burkhammer drove himself to the appointment, was dressed appropriately with normal hygiene and grooming, and exhibited a positive and cooperative attitude. (R. 363, 366.) Among his chief complaints were pain in his shoulder and knee. (R. 364.)

---

[1] The Street Survival Skills Questionnaire (SSSQ) is used to assess functional impairment, independent living skills, and appropriate vocational and residential placement for children, adolescents, and adults with physical, mental, or developmental disabilities.

[2] Mr. Burkhammer was in full regular classroom placement prior to this determination. (R. 428.)

Interestingly, he did not list his learning disability as a chief complaint, only that he was filing for Social Security because he is physically unable to do the job he wants. (*Id*.)

Mr. Burkhammer did, however, report difficulty in spelling, comprehension, and memory. (*Id*.) Mr. Burkhammer also relayed his educational history to Ms. Posey, including his participation in high school football, special education classes, and his eventual dropping out of school because he could not stay out of trouble. (R. 365.) During the mental status examination, Mr. Burkhammer interacted with Ms. Posey in a very introverted manner, and with normal eye contact. (R. 366.) He was able to carry on a very limited conversation, but in the conversation he did make his speech was relevant, coherent, and of normal pace and tone. (*Id*.) Ms. Posey did not note any difficulty with thought process, thought content, or perception, and his judgment and concentration were noted as average. (*Id*.) Ms. Posey opined that Mr. Burkhammer's remote memory was poor, and his recent memory was severely deficient. (*Id*.)

In the intellectual assessment, WAIS-III, Mr. Burkhammer achieved a verbal IQ score of 70, a performance IQ score of 77, and full scale IQ of 71. (*Id*.) Ms. Posey found that

> "[t]here is no significant difference between the claimant's Verbal IQ score of 70 and his Performance IQ score of 77. His full Scale IQ score of 71 places him in the borderline intellectual functioning range. The claimant's performance throughout the evaluation and assessments were considered to be adequate. The claimant appeared to put forth consistent effort throughout the evaluation. *The claimant's Full Scale IQ score of 71 is considered to be valid.*

(R. 367) (emphasis added.) Further, on the WRAT-4 Mr. Burkhammer achieved scores of 79 in word reading, 70 in sentence comprehension, 75 in spelling, 55 in math, and 72 in reading composite. (*Id*.) These scores place Mr. Burkhammer at about a fifth grade level in all subjects but math, which was around the first grade level. Ms. Posey considered these scored to be valid. (*Id*.)

5

Ms. Posey's diagnostic impressions after her assessments were a mathematics disorder within Axis I, and borderline intellectual functioning within Axis II. (*Id.*)

On September 30, 2008, Dr. James W. Bartee, Ph.D., performed a psychiatric review of Mr. Burkhammer and found a medically determinable impairment under Listing 12.02, organic mental disorders, but that the impairment did not meet the criteria under the Listing. (R. 370-71.) Under the "B" criteria of the Section 12 Listings, Dr. Bartee found only mild restrictions of activities of daily living; mild difficulties in maintaining social function; and mild difficulties in maintaining concentration, persistence, or pace. (R. 380.) Further, Dr. Bartee found no episodes of decompensation. (*Id.*) Finally, Dr. Bartee found that Mr. Burkhammer did not meet any of the "C" criteria of the Listings. (R. 381.)

**D. Testimonial Evidence**

Mr. Burkhammer testified that he drove himself to the hearing, but that he had to have someone show him where the place was because he does not follow directions very well. (R. 54-55.) Further, he testified that he was in special education classes during school, and that he dropped out because he had a hard time learning, and did not like the other kids picking on him. (R. 55, 57.) He also testified that he has limited reading, writing, and math skills, and that his father had to help him fill out the application for Social Security benefits. (R. 55-57.)

With regard to his employment history, Mr. Burkhammer testified that he has had several jobs, ranging from laborer to fast food to janitorial work, and that he was either fired or quit on all occasions. (R. 58-66.) The testimony then went on at length to discuss Mr. Burkhammer's daily life, how he has always lived with family, and how that family has always contributed to his daily life,

including paying bills, cooking, cleaning, and taking care of his child. (R. 66-81.)[1]

## III. THE MOTIONS FOR SUMMARY JUDGMENT

### A. Contentions of the Parties

Mr. Burkhammer's sole contention that he is entitled to benefits rests upon his belief that the ALJ erred by not finding that he met Listing 12.05(C).

The Commissioner, on the other hand, contends that the ALJ's decision that Mr. Burkhammer did not meet Listing 12.05(C) is based upon substantial evidence.

### B. The Standards

*1. Summary Judgment*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

---

[1] The transcript of the hearing is incomplete, and the portion of the transcript with the testimony of the vocational expert is missing in its entirety. However, because the Court finds that the ALJ's determination at Step Three that Mr. Burkhammer does not meet a Listing is based on substantial evidence, the missing part of the transcript is of no consequence.

*2. Judicial Review*

Only a final determination of the Commissioner may receive judicial review. *See* 42 U.S.C. §405(g), (h); *Adams v. Heckler*, 799 F.2d 131,133 (4th Cir. 1986). Moreover, An ALJ's findings will be upheld if supported by substantial evidence. *See Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998). Substantial evidence is "not a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), but that which a "reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Further, the "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

*3. Social Security - Medically Determinable Impairment - Burden.*

Mr. Burkhammer bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); *Heckler v. Campbell*, 461 U.S. 458, 460 (1983).

**C. DISCUSSION**

Mr. Burkhammer's lone contention of error is that the ALJ should have found that he met listing 12.05(c). As always, the best place to start is the statutory language of the Listing. As a preface to the 12.00 Listings, the statue recognizes that the "structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If [a claimant's] impairment satisfies the diagnostic

8

description in the introductory paragraph and any one of the four sets of criteria, we will find that [the claimant's] impairment meets the listing." 20 C.F.R. § 404 app. 1, 12.00(A). The statute then goes on to the actual Listings, of which 12.05 provides:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. § 404 app. 1, 12.05.

Thus, to meet Listing 12.05(C) Mr. Burkhammer would have to show three things: (1) that he has deficits in adaptive functioning that manifested before age twenty-two (the introductory paragraph); (2) that he has a valid verbal, performance, or full scale IQ of 60 through 70; and (3) that he has a physical or other mental impairment imposing an additional and significant work-related limitation of function. Mr. Burhammer must meet all three prongs in order to meet the listing. *See e.g. Hancock v. Astrue*, 667 F.3d 470 (4th Cir. 2012).

The ALJ spent most of his written opinion with regard to mental impairments detailing why Mr. Burkhammer did not meet Listing 12.02; namely that he did not have marked difficulties in daily activities or social functioning. (R. 31-34.) The reasoning the ALJ gave for Mr. Burkhammer not meeting 12.05(C) is as follows:

> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.05C, as asserted by counsel. The claimant's representative sought

9

> to rely on a Street Skills Survival questionnaire (Exhibit 11F/1) as establishing prerequisite significantly sub-average intellectual functioning with deficits in adaptive functioning. The Survival Skills Quotient of 78 and identification of "relatively weakest" adaptive skills is not further defined or explained, and their significance is unclear. However, as noted above, intelligence testing conducted in March 1992 and more recently both assessed the claimant to be in the borderline range of intellectual functioning. The claimant has also demonstrated significant adaptive functioning. He is married with a small child that he cares for; he has a driver's license; he has held a number of jobs from which he was let go or quit, according to his testimony, for reasons other than an inability to comprehend or mentally perform work demands (e.g., the job was located too far away, or he was fired for taking a day off work for his daughter's birth despite being told not to); his adult function report (Exhibit 5E) indicated that he is able to perform household tasks, shop and run errands, handle a savings account and pay bills, despite his hearing testimony to the contrary.

The Court will consider each prong of the listing in turn.

### *A. Deficits in Adaptive Functioning and Manifestation Before Age 22*

To satisfy this introductory paragraph, the definition of mental retardation, Mr. Burkhammer must show two things: (1) that he has deficits in adaptive functioning; and (2) that those deficits manifested prior to age twenty-two. Thus, if the ALJ makes a determination that a claimant does not have deficits in adaptive functioning, and that determination is based upon substantial evidence, then this Court's inquiry ends. *See Hancock*, 667 F.3d at 475. Factors used to determine whether deficits in adaptive functioning exist include "limitations in areas such as communication, self care, home living, social/interpersonal skills, use of community resources, self direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 Fed. Appx. 214, 218 (4th Cir. 2012) (unpublished) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002)).

The ALJ went into detail as to why Mr. Burkhammer does not have deficits in adaptive functioning, including the fact that

> [h]e is married with a small child that he cares for; he has a driver's license; he has held a number of jobs from which he was let go or quit, according to his testimony, for reasons other than an inability to comprehend or mentally perform work demands (e.g., the job was located too far away, or he was fired for taking a day off work for his daughter's birth despite being told not to); his adult function report indicated that he is able to perform household tasks, shop and run errands, handle a savings account and pay bills, despite his hearing testimony to the contrary.

(R. 34.) The Court finds that the ALJ's decision is based upon substantial evidence. All of the evidence of Mr. Burkhammer's functioning, aside from educational, shows that he has little difficulties in adaptive functioning. The only evidence to the contrary is Mr. Burkhammer's testimony at the hearing, which the ALJ determined was inconsistent with the record evidence. (R. 37.) The record shows that he is able to: communicate; take care of himself, and look out for his health and safety; contribute to taking care of the home; maintain social relationships; enjoy leisure activities; and work. Although he is limited in the academic setting, the evidence does show that Mr. Burkhammer has some functional skills in that area, including the ability to read and write, albeit at a lower level. Because the ALJ's decision that Mr. Burkhammer does not meet the introductory paragraph is based upon substantial evidence, he cannot meet Listing 12.05(C). Nonetheless, the Court will give a brief discussion of the other prongs.

## B. Intelligence Testing

Although there are several IQ scores in the record, the ALJ did not mention those scores in his determination that Mr. Burkhammer does not meet 12.05(C). Rather, he determined that the intelligence testing resulted in an assessment that Mr. Burkhammer is in the borderline range of intellectual functioning. However, that is not the correct inquiry into whether Mr. Burkhammer

meets that Listing. First, there has to be a valid IQ score between 60 and 70 to meet 12.05(C).[1] Mr. Burkhammer was first tested in 1992 at age fourteen, and received scores of 69 verbal, 78 performance, and 72 full scale. The administering psychologist found these to be a fair estimate of Mr. Burkhammer's intelligence. (R. 419-20.) Approximately sixteen years later, another intelligence test was given, which revealed scores of 70 verbal, 77 performance, and 71 full scale. The administering psychologist noted only that the full scale score was valid. (R. 367.)

"In cases where more than one IQ is customarily derived from the test administered, *e.g.*, where verbal, performance, and full scale IQs are provided in the Wechsler series, [the Social Security Administration] use[s] the lowest of these in conjunction with 12.05." 20 C.F.R. § 404app. 1, 12.00(D)(6)(c). *see also Grant v. Schweiker*, 699 F.2d 189 (4th Cir.1983).Thus, as long as the lowest score achieved by Mr. Burkhammer falls within the range of 60-70, and is considered valid, then he meets this part of the Listing. Mr. Burkhammer's intelligence testing meets this test on both occasions. His lowest score in 1992 was a 69 verbal and his lowest score in 2008 was a 70 verbal.

An ALJ may, however, reject IQ scores that are inconsistent with the entire record. In *Hancock*, the Fourth Circuit found that "[a] valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record of the claimant's daily activities and behavior." *Id*. at 475 (quoting *Lowery v. Sullivan*, 979 F.2d 835, 837 (11 th Cir. 1992)). Accordingly, "[t]est results must be examined to assure consistency with daily activities and behavior." *Id*. (quoting *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986)) Here, however, the ALJ did not specifically reject the IQ scores in the record as inconsistent with the other evidence.

---

[1] "[S]ince the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. § 404 app. 1, 12.00(D)(6)(a).

12

Rather, he opined that Mr. Burkhammer was in the borderline range of intellectual functioning, and that he has shown no deficits in adaptive functioning. Although the Court believes that the ALJ should have stated whether he was rejecting the scores in his opinion, and the reasoning for the rejection, this amounts to harmless error because Mr. Burkhammer does not meet the introductory paragraph of the Listing.

## *C. Additional Impairment*

The ALJ did not discuss whether Mr. Burkhammer meets this prong of the Listing. The Court finds that there is substantial evidence that Mr. Burkhammer has a physical or other mental impairment imposing an additional and significant work-related limitation of function. The ALJ, at step two of the sequential evaluation process, found that Mr. Burkhammer suffers from several severe impairments, including: "left shoulder pain/tendonitis; left knee pain; borderline intellectual functioning; [and] mathematics disorder." (R. 30.) Further, the ALJ found that Mr. Burkhammer is unable to perform any past relevant work. (R. 38.) These two things alone are enough to meet the additional limitation requirement of 12.05(C). *See Luckey v. U.S. Dept. of Health & Hum. Svcs.*, 890 F.2d 666, 669 (4th Cir. 1989) ("[The Claimant's] inability to perform his prior relevant work alone established the significant work-related limitation of function requirement of section 12.05(C). Further, the Secretary's finding that [the Claimant] suffers from a severe combination of impairments also established the second prong of section 12.05(C).") (internal citations omitted). Thus, Mr. Burkhammer clearly meets this prong of Listing 12.05(C).

## IV. RECOMMENDATION

In sum, the Court finds that the ALJ based his decision that Mr. Burkhammer does not have deficits in adaptive functioning on substantial evidence. Because Mr. Burkhammer does not meet

the diagnostic description of mental retardation contained in the Listing (the introductory paragraph), he cannot meet Listing 12.05(C). Accordingly, the Court recommends that:

1. Mr. Burkhammer's Motion for Summary Judgment be **DENIED**.

2. Commissioner's Motion for Summary Judgment be **GRANTED** for the reasons set forth.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: February 5, 2013              /s/ *James E. Seibert*
                                     JAMES E. SEIBERT
                                     UNITED STATES MAGISTRATE JUDGE