IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


STEVEN A. BURKHAMMER, II,

        **Plaintiff,**

v.                              CIVIL ACTION NO. 1:12CV113
                                   (Judge Keeley)

COMMISSIONER OF SOCIAL
SECURITY

        **Defendant.**


## MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION


Pursuant to 28 U.S.C. §636(b)(1)(B), Fed. R. Civ. P. 72(b), and L.R. Civ. P. 4.01(d), on July 16, 2012, the Court referred this Social Security action to United States Magistrate James E. Seibert ("Magistrate Judge Seibert" or "magistrate judge") with directions to submit proposed findings of fact and a recommendation for disposition.

On February 5, 2013, Magistrate Judge Seibert filed his Report and Recommendation ("R&R") and directed the parties, in accordance with 28 U.S.C. §636(b)(1) and Rule 6(e), Fed. R. Civ. P., to file any written objections with the Clerk of Court within fourteen (14) days after being served with a copy of the R&R. On February 18, 2013, plaintiff, Steven A. Burkhammer ("Burkhammer"), through counsel, Travis M. Miller, filed objections to the R&R. (Dkt. No. 22.)

**MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

## I.  <u>PROCEDURAL BACKGROUND</u>

On June 27, 2008, Burkhammer applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability since April 24, 2008, due to difficulties in reading and understanding, learning disabilities, leg problems, and shoulder problems. (R. 146-53, 176.) The Commissioner initially denied Burkhammer's application on October 23, 2008, and on reconsideration on March 3, 2009. (R. 28.)

Following a March 12, 2009 request for a hearing, an Administrative Law Judge ("ALJ"), conducted a hearing on June 22, 2010 at which Burkhammer, represented by counsel, testified. An impartial Vocational Expert ("VE") also testified. (R. 28.) On July 8, 2010, the ALJ issued an unfavorable decision, Burkhammer then appealed, and, on May 18, 2012, the Appeals Council denied his request for review. (R. 1.) On July 16, 2012, Burkhammer timely filed this suit seeking judicial review of that final decision. (Dkt. No. 1.)

## II.  <u>PLAINTIFF'S BACKGROUND</u>

Burkhammer was born on May 19, 1977, and is considered a younger individual pursuant to 20 C.F.R. 404.1563 and 416.964. His personal history includes three marriages, three divorces and four

MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

children. (R&R 2.) He dropped out of school during the tenth grade,

claiming learning difficulties and a dislike of "being picked on."

His work history includes employment in several different areas,

including as a cook at various fast food restaurants, as a laborer

in the sheet metal industry, and at various grocery stores. (R.

163-171.) He has not worked since the date of the onset of his

alleged disability. (R&R 3.)

### III.   ADMINISTRATIVE FINDINGS

Utilizing the five-step sequential evaluation process

prescribed in the Commissioner's regulations at 20 C.F.R.

§§ 404.1520, the ALJ made the following findings:

1.   Burkhammer met the insured status requirements of
     the Social Security Act through December 31, 2012;

2.   Burkhammer has not engaged in substantial gainful
     activity since April 24, 2008, the alleged onset
     date;

3.   Burkhammer has the following severe impairments,
     left shoulder pain/tendonitis, left knee pain,
     borderline intellectual functioning, mathematics
     disorder that do not meet or medically equal one of
     the listed impairments in 20 CFR Part 404, Subpart
     P, Appendix 1 (20 CFR 404.1520(d), 404.1525,
     404.1526, 416.920(d), 416.925 and 416.926);

4.   Burkhammer has the residual functional capacity to
     perform light work as defined in 20 CFR 404.1567(b)
     and 416.967(b) with the following restrictions, can
     perform all postural movements occasionally, except

**MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

---

no crouching or climbing of ladders, ropes or scaffolds, must avoid all temperature extremes or hazards, is limited to occupations that do not require more than occasional overhead reaching, is limited to unskilled work, can understand and follow simple instructions and perform simple, routine, repetitive tasks involving little independent decision-making, and is limited to occupations that require no more than occasional, simple reading or math;

5.   Burkhammer is unable to perform any of his past relevant work (20 CFR § 404.1565);

6.   As of the alleged disability onset date, Burkhammer is considered a younger individual age 18-49 (20 CFR § 404.1563 and 416.963);

7.   Burkhammer has a limited education but is able to communicate in English (20 CFR § 404.1564 and 416.964);

8.   Burkhammer has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case because the Medical-Vocational Rules support a finding of not disabled (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

8.   Considering Burkhammer's age, education, work experience and residual functional capacity, there are a significant number of jobs in the national economy that he could perform (20 CFR 404.1569(a), 416.969 and 416.969(a)); and

12.  Burkhammer was not under a "disability," as defined in the Social Security Act, from April 24, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

**MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

(R. 28-40.)

## IV.  <u>PLAINTIFF'S OBJECTIONS</u>

Burkhammer asserts that the ALJ's decision is based on an error of law. He contends that the record does not contain substantial evidence to support the ALJ's finding that he failed to establish that he had "deficits in adaptive functioning as required by Listing 12.05C." (Dkt. No. 22.) The Commissioner did not file any objections to the R&R.

## V.  <u>MEDICAL EVIDENCE</u>

The magistrate judge limited the medical history in his R&R to the medical evidence directly related to the issue of whether there is substantial evidence in the record to support the ALJ's finding that Burkhammer failed to satisfy the criteria of Listing 12.05C of the Act. The Court incorporates the medical history contained in the magistrate judge's R&R. (Dkt. No. 21, p. 3-6.)

The magistrate judge specifically noted:

1.  A February 1992 psychological evaluation from Terry Laurita, M.A. ("Ms. Laurita") based on several interviews, as well as a battery of tests, including: the Wide Range Achievement Test-Revised (WRAT-R); the Minnesota Multiphasic Personality Inventory (MMPI); the Wechsler Intelligence Test for Children-Revised (WISC-

**MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

R); and the Slosson Intelligence Test-Revised (SIT-R) performed when Burkhammer was fourteen years old and in the seventh grade that indicated a verbal IQ of 69, a performance IQ of 78 and a full scale IQ of 72.(R. 418.) Ms. Laurita noted that, even though Mr. Burkhammer "was not happy about having to take the intelligence test," she believed the scores were "a fair estimate of his current level of intellectual functioning." (R. 419-20.);

2.   A November 10, 1993 adaptive evaluation report from Braxton County Schools performed when Burkhammer was sixteen years old indicating he achieved a Survival Skills Quotient[1] of 78, based on a mean of 100 and a standard deviation of 15, noting he performed in the average range in functional signs, time, and money, was relatively weak in basic concepts, tools, domestics, health and safety, public service, and measurements, and recommending learning activities to help in the areas in which he was deficient. (R. 416.);

---

[1]  The Street Survival Skills Questionnaire (SSSQ) is used to assess functional impairment, independent living skills, and appropriate vocational and residential placement for children, adolescents, and adults with physical, mental, or developmental disabilities.

**MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

3.    A December 1994 Individualized Education Program ("IEP") from Braxton County High School developed when he was in tenth grade and nearly eighteen years old indicating Burkhammer participated in regular education classes eighty-eight percent (88%) of the time, in special education classes twelve percent (12%) of the time, and received modified grades.[1] (R. 421.) The eligibility committee for this IEP determined that Burkhammer met the criteria for mildly mentally impaired at that time. (R. 427.) About a month later, Burkhammer took the Woodcock-Johnson Revised Test. His scores on that test placed him in between third and sixth grade in the various subjects. He dropped out of school later that year without completing the tenth grade. (R. 417.);

4.    A September 19, 2008 report from Wilda Posey, M.A., who performed several assessments at the request of the West Virginia Disability Determination Service, including  a clinical interview, a mental status examination, a Wechsler Adult Intelligence Scale (WAIS-III), and a Wide Range Achievement Test (WRAT-4). Ms. Posey indicated that Burkhammer had driven himself to the appointment,

---

[1] An eligibility committee report from Braxton County, West Virginia dated December 15, 1994 indicates that, while in school in Lewis County, West Virginia, Burkhammer attended all regular classes. (R. 428.)

## MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

was dressed appropriately with normal hygiene and grooming, and exhibited a positive and cooperative attitude. (R. 363, 366.)

According to Ms. Posey, Burkahmmer's chief complaints were pain in his shoulder and knee. He did not list learning disability. She indicated that he was filing for Social Security because he was physically unable to do the job he wants. (R. 364.) He reported difficulty in spelling, comprehension, and memory, attending special education classes, and leaving school because he could not stay out of trouble. (R. 365.)

During the mental status examination, Ms. Posey noted that Burkhammer had a very introverted manner, made normal eye contact, made limited, relevant, coherent conversation at a normal pace and tone, had average judgment and concentration, poor remote memory and severely deficient recent memory. Ms. Posey did not note any difficulty with thought process, thought content, or perception. (R. 366.)

Burkhammer's results from the WAIS-III were a verbal IQ score of 70, a performance IQ score of 77, and full scale IQ of 71 . (R. 365). Ms. Posey reported that

> "[t]here is no significant difference between the claimant's Verbal IQ score of 70 and his Performance IQ score of 77. His full Scale IQ score of 71 places him in

**MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

> the borderline intellectual functioning range. The
> claimant's performance throughout the evaluation and
> assessments were considered to be adequate. The claimant
> appeared to put forth consistent effort throughout the
> evaluation. The claimant's Full Scale IQ score of 71 is
> considered to be valid.

(R. 367.)

On the WRAT-4, Burkhammer achieved valid scores of 79 in word

reading, 70 in sentence comprehension, 75 in spelling, 55 in math,

and 72 in reading composite which place him at about a fifth grade

level in all subjects except math where he was near the first grade

level. Ms. Posey's diagnostic impressions were a mathematics

disorder within Axis I, and borderline intellectual functioning

within Axis II. (R. 367.); and

5.   A September 30, 2008 psychiatric review from  Dr. James

W. Bartee, Ph.D., which found a medically determinable impairment

under Listing 12.02, organic mental disorders, that does not meet

the criteria under the Listing. (R. 370-71.) Under the "B" criteria

of the Section 12 Listings, Dr. Bartee indicated that Burkhammer

had  mild  restrictions  of  activities  of  daily  living,  mild

difficulties in maintaining social function, mild difficulties in

maintaining concentration, persistence, or pace, no episodes of

MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

decompensation, and further noted that Burkhammer did not meet any of the "C" criteria of the Listings. (R. 380-1.)

## VI.  DISCUSSION

### A. Scope of Review

The scope of review of an administrative finding of no disability is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). In Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986), the Fourth Circuit described the scope of review as "specific and narrow. We do not conduct a de novo review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Elaborating on this definition, the Fourth Circuit has stated

**MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict where the case is before a jury, then there is 'substantial evidence.'" Hays, 907 F.2d at 1456 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1968)). And, in Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987), the Fourth Circuit held: "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." 829 F.2d 514, 517 (4th Cir. 1987).

Pursuant to 42 U.S.C. § 423(d)(1), (d)(2)(A) and Heckler v. Campbell, 461 U.S. 458, 460 (1983), Burkhammer has the burden of establishing that he has a medically determinable impairment that is so severe that it prevents him from engaging in any substantial gainful activity that exists in the national economy.

**B.**

Burkhammer's sole objection is that the ALJ erred in deciding that the record did not contain substantial evidence to support a finding that he had deficits in adaptive functioning manifested before age 22 as required by Listing 12.05C. He asserts that the Street Skills Questionnaire administered when he was sixteen establishes that he had deficits in adaptive functioning. (Dkt. No.

**MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

22 at 6).

At the third step of the sequential evaluation, an ALJ must determine whether a claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(e)). If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 416.909), that claimant is disabled. If not, the ALJ's analysis proceeds to the next step. Here, the ALJ determined that Burkhammer's impairments included left shoulder pain/tendonitis, left knee pain, borderline intellectual functioning and mathematics disorder. (R. 30).

The ALJ analyzed Burkhammer's impairments pursuant to Section 101 regarding the impairments of the musculoskeletal system, Section 12.00 regarding the mental impairments, and determined:

> . . . neither the examining physicians'
> reports nor the clinical (imaging/laboratory)
> data meets the minimum criteria required by
> Section 1.02, 12.02 or 12.05.

(R. 31).

Listing 12.00 provides, in pertinent part:

> The structure of the listing for mental retardation
> (12.05) is different from that of the other mental
> disorders listings. Listing 12.05 contains an

12

**MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations. For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to perform basic work activities, *i.e.*, is a "severe" impairment(s), as defined in section 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in sections 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 section 12.00.

Listing 12.05C provides:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C or D are satisfied . . . .

C.  A valid verbal performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

## MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

20 C.F.R. Pt. 404, Subpt. P, App. 1 section 12.05C.

## 1.   Deficits in Adaptive Functioning

In Hancock v. Astrue, 667 F.3d 470 (4th Cir. 2012), the Fourth Circuit held that, in order to meet the criteria of Section 12.05C, a claimant must establish: (1) that he has deficits in adaptive functioning that manifested before age twenty-two; (2) that he has a valid verbal, performance, or full scale IQ of 60 through 70; and (3) that he has a physical or other mental impairment that imposes an additional and significant work-related limitation of function. Significantly, Hancock also held that, if an ALJ determines that a claimant does not have deficits in adaptive functioning and bases that determination on substantial evidence, the inquiry ends. See Hancock, 667 F.3d at 475. In Jackson v. Astrue, 467 Fed. Appx. 214, 218 (4th Cir. 2012) (unpublished) (citing Atkins v. Virginia, 536 U.S. 304, 309 n.3 (2002)), the Fourth Circuit held that, when determining whether a claimant has deficits in adaptive functioning, an ALJ may consider "limitations in areas such as communication, self care, home living, social/interpersonal skills, use of community resources, self direction, functional academic skills, work, leisure, health, and safety."

Here, the ALJ determined as follows:

14

**MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.05C, as asserted by counsel. The claimant's representative sought to rely on a Street Skills Survival questionnaire (Exhibit 11F/1) as establishing prerequisite significantly sub-average intellectual functioning with deficits in adaptive functioning. The Survival Skills Quotient of 78 and identification of 'relatively weakest' adaptive skills is not further defined or explained, and their significance is unclear. However, as noted above, intelligence testing conducted in March 1992 and more recently both assessed the claimant to be in the borderline range of intellectual functioning. The claimant has also demonstrated significant adaptive functioning. He is married with a small child that he cares for; he has a driver's license; he has held a number of jobs from which he was let go or quit, according to his testimony, for reasons other than an inability to comprehend or mentally perform work demands (e.g., the job was located too far away, or he was fired for taking a day off work for his daughter's birth despite being told not to); his adult function report (Exhibit 5E) indicated that he is able to perform household tasks, shop and run errands, handle a savings account and pay bills, despite his hearing testimony to the contrary.

(R. 31-34.)

In determining that Burkhammer demonstrated little difficulty in adaptive functioning other than on the educational level[1], the ALJ relied on Burkhammer's adult function report that indicated he helped care for a small child, has a valid driver's license, held

---

[1] Although he is limited in the academic setting, the evidence establishes that Burkhammer has the ability to read and write, albeit at a lower level. (R. 5).

a number of jobs that he either quit or from which he was "let go" for reasons other than an inability to comprehend or mentally perform the work demands, and his ability to perform household tasks, shop and run errands, handle a savings account and pay bills. (R. 34).

After reviewing and comparing Burkhammer's testimony at the administrative hearing and the medical evidence of record regarding deficits in adaptive functioning, the magistrate judge noted numerous inconsistencies. For example, at the hearing, Burkhammer testified that he had difficulties performing daily activities, such as reading street signs, counting change or paying bills (R. 33). In August 2008, however, Burkhammer had reported to Ms. Posey that he had "no difficulties paying bills, counting change or handling a savings account." (R. 37). In other statements made to Ms. Posey September 2008, Burkhammer reported that his writing was "okay" and that he read "some." (R. 37).

Furthermore, at the hearing Burkhammer also testified that his wife, stepmother or brother-in-law did most of the household chores and child care. In September 2008, however, Burkhammer had reported caring for his six-year-old child all day long, taking her for walks around town in her stroller, going to the post office daily,

## MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

shopping for groceries monthly, performing mechanical work on his own vehicle, going out to eat three times monthly, visiting with family regularly, attending medical appointments, doing household chores with his girlfriend and caring for his own personal needs and hygiene. (R. 37).

From this, the magistrate judge determined that the record contained substantial evidence supporting the ALJ's decision that Burkhammer failed to meet the introductory paragraph of 12.05C. Therefore, pursuant to Hancock, 667 F.3d at 475, Burkhammer cannot meet Listing 12.05C and the inquiry ends. Nevertheless, the magistrate judge provided a brief discussion of the other prongs.

1.    **Valid IQ scores**

Listing 12.05C requires a valid IQ score between 60 and 70.[7] In 1992 at age fourteen, Burkhammer received a Verbal Score of 69, a Performance Score of 78, and a Full Scale Score of 72, all of which William J. Fremouw, the administering psychologist, noted fairly estimated Burkhammer's intelligence at that time. (R. 419- 20.) At age thirty-one (31), Burkhammer received a Verbal Score of

---

[7] "[S]ince the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. § 404 app. 1, 12.00(D)(6)(a).

**MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

70, a Performance Score of 77, and a Full Scale Score of 71 that Ms. Posey, the administering psychologist, also noted represented a valid full scale score. (R. 367.)

"In cases where more than one IQ is customarily derived from the test administered, *e.g.*, where verbal, performance, and full scale IQs are provided in the Wechsler series, [the Social Security Administration] use[s] the lowest of these in conjunction with 12.05." 20 C.F.R. § 404app. 1, 12.00(D)(6)(c). <u>See also</u> <u>Grant v. Schweiker</u>, 699 F.2d 189 (4th Cir.1983). Thus, because the lowest score in 1992 was a 69 Verbal and in 2008 the lowest score was a 70 Verbal, and both scores were valid and fell within the range of 60-70, the magistrate judge determined that Burkhammer satisfied this prong of Listing 12.05C.

The magistrate judge noted, however, that, in <u>Hancock</u>, the Fourth Circuit found that "[a] valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record of the claimant's daily activities and behavior." <u>Id</u>. at 475 (quoting <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11 th Cir. 1992)). Accordingly, "[t]est results must be examined to assure consistency with daily activities and behavior." <u>Id</u>. (quoting <u>Popp v. Heckler</u>, 779 F.2d

18

MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

1497, 1499 (11th Cir. 1986))

Thus, even though the ALJ did not provide his reasoning regarding the valid IQ scores, since the ALJ determined that Burkhammer failed to satisfy the introductory paragraph of Section

12.05C, the magistrate judge determined that the lack of reasoning was harmless error.

**2.    Additional Impairment**

The magistrate judge noted that the ALJ also had failed to discuss whether Burkhammer satisfied the requirement in Section 12.05C regarding an additional impairment. At step two of the sequential evaluation process, the ALJ listed Burkhammer's severe impairments as left shoulder pain/tendonitis, left knee pain, borderline intellectual functioning, and mathematics disorder. (R. 30.) Further, the ALJ found that Burkhammer was unable to perform any past relevant work. (R. 38.) The magistrate judge determined that these two things alone were sufficient to meet the additional limitation requirement of 12.05C. See Luckey v. U.S. Dept. of Health & Hum. Svcs., 890 F.2d 666, 669 (4th Cir. 1989) ("[The Claimant's] inability to perform his prior relevant work alone established the significant work-related limitation of function

**MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

requirement of section 12.05C. Further, the Secretary's finding that [the Claimant] suffers from a severe combination of impairments also established the second prong of section 12.05C.") (internal citations omitted). Thus, the magistrate judge determined that Burkhammer also met this prong of Listing 12.05C.

Following a thorough review of the record, however, the magistrate judge determined that the record contained substantial evidence to support the ALJ's conclusion that Burkhammer had failed to establish deficits in adaptive functioning manifested initially prior to age 22 as required by Listing 12.05C. The Court agrees.

## VII. CONCLUSION

After careful consideration of Burkhammer's objections, it appears to the Court that he has not raised any issues that were not thoroughly examined and weighed by Magistrate Judge Seibert in his R&R. Moreover, following an independent de novo consideration of all matters before it, the Court is of the opinion that the R&R accurately reflects the law applicable to the facts and circumstances before it in this action. Therefore, it **ACCEPTS** the magistrate judge's R&R in whole and **ORDERS** that this civil action be disposed of in accordance with the recommendation of the magistrate judge. Therefore, it

**MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

1.  **GRANTS** the defendant's motion for Summary Judgment
    (Docket No. 18);

2.  **DENIES** the plaintiff's motion for Summary Judgment
    (Docket No. 14); and

3.  **DISMISSES** this civil action **WITH PREJUDICE** and **ORDERS**
    that it be **RETIRED** from the docket of this Court.

Pursuant to Fed.R.Civ.P. 58, the Court directs the Clerk of
Court to enter a separate judgment order and to transmit copies of
this Order to counsel of record.

If a petition for fees pursuant to the Equal Access to Justice
Act (EAJA) is contemplated, the plaintiff is warned that, as
announced in <u>Shalala v. Schaefer</u>, 113 S.Ct. 2625 (1993), the time
for such a petition expires in ninety days.

DATED: August 19, 2013.


                                  <u>/s/ Irene M. Keeley</u>
                                  IRENE M. KEELEY
                                  UNITED STATES DISTRICT JUDGE